Roger A. S. Manlin, Bar #051094
rmanlin@manlinlaw.com
4647 Kingswell Ave., No. 158
Los Angeles, CA 90027
Telephone: (323) 953-6789
Facsimile: (323) 953-6156

Attorney for Plaintiff Franciska Susilo

## UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | |
|---|---|
| FRANSISKA SUSILO, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO BANK, N.A.; WACHOVIA MORTGAGE, a division of Wells Fargo Bank, N. A., successor by merger to Wachovia Mortgage, FSB; ETS SERVICES, LLC, form unknown; CHRISTOPHER LEE ROBERTSON, an individual doing business as Real Estate Advisors, form unknown; ADVISORS, INC., a California corporation doing business as Real Estate Advisors; REAL ESTATE ADVISORS, form unknown; 1100 WILSHIRE PROPERTY OWNERS ASSOCIATION, form unknown; ACTION PROPERTY MANAGEMENT, INC., a California Corporation; BARRY JAMES, an individual; Does 1 to 50, Inclusive,<br><br>Defendants. | CASE No.: 2:11-cv-01814-CAS-PJW<br><br>[The Hon. Christina A. Snyder, Judge, Courtroom 5 – 2nd Floor]<br><br>Complaint Filed: February 17, 2011<br><br>[Proposed] Third Amended Complaint for:<br>Claims Applicable to Wrongful Foreclosure<br>1. Negligence<br>2. Breach of Contract,<br>3. Negligent Misrepresentation<br>4. Fraud<br>5. Promissory Fraud<br>6. Trespass and Conversion<br>7. Wrongful Foreclosure<br>8. Wrongful Eviction<br>9. Intentional Infliction of Emotional Distress<br>10. Negligent Infliction of Emotional Distress<br>11. Breach of the Implied Covenant of Good Faith and Fair Dealing<br>12. Aiding And Abetting and Conspiracy<br>13. Violation of B&PC § 17200 *et seq.*<br><br>Demand for Jury Trial |

Plaintiff complains and for causes of action alleges as follows:

PLAINTIFF'S [PROPOSED] THIRD AMENDED COMPLAINT

## GENERAL ALLEGATIONS

**PARTIES**

1.     Plaintiff Fransiska Susilo (hereinafter "Plaintiff" or "Trustor"), is now and at all times relevant to this action was a resident of the City of Singapore, Republic of Singapore, and was the owner of the real property residence commonly known as 1100 Wilshire Blvd., Unit 3108, Los Angeles, CA 90017, APN 5143-029-173 (hereinafter the "Property"). Prior to the wrongful foreclosure of the Property and eviction of Plaintiff from the Property, Plaintiff and her family owned and occupied the Property as a second home.

2.     Upon information and belief, Defendant WELLS FARGO BANK, N.A. (hereinafter "Wells Fargo"), is an entity of unknown form doing business in the County of Los Angeles, State of California.

3.     Defendant, WACHOVIA MORTGAGE (hereinafter "Wachovia Mortgage"), is a business organization the form of which is presently unknown to Plaintiff, but which Plaintiff is informed and believes is and was at all times mentioned herein a division of Wells Fargo doing business in Los Angeles County, California. Defendants Wells Fargo and Wachovia Mortgage are individually and collectively referred to herein as "lender".

4.     Upon information and belief, ETS SERVICES, LLC ("ETS") is an entity of unknown form doing business in the County of Los Angeles, State of California with offices located at 2255 N. Ontario St., Suite 400, Burbank, CA 91504. All acts of ETS alleged herein were performed by it in its capacity as the appointed trustee under and pursuant to a deed of trust recorded 5/7/08 as instrument No. 20080806003 of the official records of the Los Angeles County recorder's office (the "deed of trust") on behalf of, as the agent of, and under the direction and control of lender. Upon information and belief, on May 14, 2012, defendant ETS filed for bankruptcy under Chapter 11 of Title 11 of the Bankruptcy Code. Accordingly no claims are made against defendant ETS by the filing of this complaint, and it is referred to herein

1  only to allege acts and omissions relevant to claims against other named defendants.

2       5.    Plaintiff is informed and believes, and thereon alleges, that Defendant

3  Christopher Lee Robertson is an individual, with offices and doing business at all

4  times mentioned herein at 5482 Wilshire Blvd Ste 315, Los Angeles, CA.  Plaintiff

5  is informed and believes, and thereon alleges, that Defendant Christopher Lee

6  Robertson is a California real estate licensee, and is the owner, managing agent and

7  responsible officer and broker for Defendant Advisors, Inc., a California corporation

8  and real estate broker.  Plaintiff is informed and believes, and thereon alleges that

9  Defendant Real Estate Advisors is a dba of Defendants Christopher Lee Robertson

10  and Advisors, Inc.  (Defendants Christopher Lee Robertson, Real Estate Advisors,

11  and Advisors, Inc. are individually and collectively referred to herein as "Advisors".)

12  Plaintiff is informed and believes, and thereon alleges, that Defendant Advisors at all

13  times herein mentioned was the listing agent and real estate broker for the sale of

14  Lenders' REO properties,  and engaged in the conduct alleged herein in that capacity

15  and in violation of statutory licensee regulatory provisions, including Business &

16  Professions Code § 10176.

17       6.    Upon information and belief, 1100 WILSHIRE PROPERTY OWNERS

18  ASSOCIATION ("HOA"), is an entity of unknown form doing business in the

19  County of Los Angeles, State of California, and at all times mentioned herein was the

20  homeowners association of which Plaintiff as the owner of the Property was a

21  member.

22       7.    Upon information and belief, Defendant ACTION PROPERTY

23  MANAGEMENT, INC. ("Action Management") is a California corporation doing

24  business in the County of Los Angeles, State of California, and at all times mentioned

25  herein was the management company acting on behalf of the HOA as the manager of

26  the Property.

27       8.    Plaintiff is informed and believes, and thereon alleges, that Defendant

28  Barry James is an individual residing in California, and during the period from prior

PLAINTIFF'S [PROPOSED] THIRD AMENDED COMPLAINT

3

to August, 2010, through not earlier than February, 2011, had offices and was doing business at the Property as its resident general manager as agent and/or employee of Defendants Action Management and the HOA. Defendants Barry James, HOA and Action Management are hereinafter sometimes collectively referred to as the "Management Defendants".

9.     The true names and capacities, whether individual, corporate, associate or otherwise, of the Defendants designated  fictitiously herein are unknown to Plaintiff at this time who, therefore, sues said Defendants by said fictitious names and will seek leave of this court to amend this complaint to show their true names and capacities when the same have been ascertained, together with such additional allegations which may be necessary in that regard. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and that the damages as herein alleged were caused by their conduct.

10.     At all times mentioned herein, each Defendant, including Does, was acting as the agent, servant and/or employee of each of the other Defendants and was acting within the course and scope of said agency and employment, with the consent, express and implied, of each of the other Defendants, and each of the Defendants authorized, ratified, approved and participated in the acts and omissions herein alleged. Whenever in this complaint reference is made to any act of Defendants, or a named Defendant, such allegations shall be deemed to mean the acts of the Defendants named in the particular cause of action, Does 1 through 50, inclusive, and each of them, acting individually, jointly and severally.

**STATEMENT OF FACTS**

11.     At all times relevant to this action, Plaintiff was the trustor under the deed of trust. The deed of trust and the loan agreement which it secures are written contracts which set forth the rights and duties of the beneficiary under the deed of trust to proceed with a nonjudicial foreclosure sale in the event of a default under the

terms of the deed of trust or the note secured by the deed of trust.

12. Plaintiff is informed and believes, and thereon alleges, that at all times relevant to this action, ETS was the trustee and Wachovia Mortgage was the beneficiary under the deed of trust. Plaintiff is informed and believes and thereon alleges that the deed of trust contains a provision providing for attorneys' fees to the prevailing party in the event of a dispute.

13. Plaintiff is informed and believes, and thereon alleges, that on or about July 21, 2010, Defendants caused to be recorded as document number 10-0996367 a Notice of Default and Election to Sell under Deed Of Trust ("NOD") based upon Plaintiff's alleged default of $37,515.31 in the payments of the loan secured by the deed of trust as of July 20, 2010.

14. Neither the NOD nor any other document pertaining to the foreclosure referenced in the NOD was properly prepared or served on Plaintiff in compliance with applicable law or delivered to Plaintiff at her address in Singapore which, at all times, was known to Defendants.

15. The NOD was incomplete and contained false and misleading information including, without limitation, that it incorrectly identifies the loan secured by the Property in the deed of trust and with respect to which Plaintiff is alleged in the NOD to have defaulted on as Loan No. 0048434922100431680. Plaintiff is informed and believes, and thereon alleges that the preparation, recording and delivery of the NOD was done by ETS and ETS representatives as the agent for non-behalf of lender.

16. The NOD instructs Plaintiff that to find out the amount which must be paid to reinstate the loan, or to arrange for payment to stop the foreclosure, contact Wachovia Mortgage C/O ETS. However, as set forth below, ETS and the ETS representatives, and each of them, failed and refused to provide any information requested by Plaintiff with regard to the amount necessary to reinstate the loan or to stop the foreclosure.

PLAINTIFF'S [PROPOSED] THIRD AMENDED COMPLAINT

17.   Upon receipt of the NOD during or about September, 2010, Plaintiff immediately sought to cure any default in the deed of trust and contacted ETS by telephone as directed in the NOD. Plaintiff was advised by the ETS representatives that as of October 11, 2010, the total amount necessary to cure the default and fully reinstate the loan and deed of trust was less than $46,800 which funds should be delivered to Wachovia Mortgage. This was confirmed to Plaintiff in a letter dated September 28, 2010, sent by Defendant Shanon De'Arman on behalf of ETS and Wachovia Mortgage.

18.   In accordance with the instructions received from the ETS representatives, Shanon De'Arman and Wachovia Mortgage, Plaintiff on October 7, 2010, caused a check in the amount of $46,800 issued by Bank of America to be delivered to Wachovia Mortgage, which check was accepted and endorsed for deposit by Wachovia Mortgage and Wells Fargo. The default referred to in the NOD was thereby cured and the loan reinstated.

19.   At some time after October 11, 2010, Defendants, without notifying Plaintiff, failed and refused to reinstate the loan, caused the deposit endorsement of lender to be canceled and proceeded with scheduling a foreclosure sale of the Property pursuant to the NOD. During late October or early November, Plaintiff received an unsigned letter from the Foreclosure Department of Wachovia Mortgage, backdated to October 12, 2010, stating that the check previously delivered to Wachovia Mortgage would not be accepted because the funds were "received during the initiation of a foreclosure action and are not enough to reinstate the loan." This statement was false and was known by Defendants to be false at the time it was made. The cancellation of the endorsement and rejection of the check was without justification and was concealed from Plaintiff by Defendants for the purpose of foreclosing on the Property.

20.   Plaintiff received no notice of the scheduled sale as required by law, which was without justification and which was concealed from Plaintiff by

1   Defendants, and each of them.

2       21.   On or about November 4, 2010, upon receipt of the backdated October

3   12, 2010 letter, Plaintiff contacted Gary Pollack, an accountant in Los Angeles,

4   through her stepson, David Soeryadjaya, who advised Mr. Pollack that Plaintiff

5   believed Defendants may not have reinstated the loan and intended to proceed with

6   a foreclosure of the Property, requesting his assistance in curing any default will

7   probably not and effecting the reinstatement.

8       22.   On November 4, 2010, Mr. Pollack contacted ETS and spoke with ETS

9   representatives and advised them that the loan should have been reinstated, that the

10   default had been cured, and that Plaintiff was interested in curing any default and

11   preventing any foreclosure. Mr. Pollack demanded on behalf of Plaintiff a payoff

12   demand statement setting forth the amount that must be paid to reinstate the loan.

13   The ETS representatives told Mr. Pollack that no one at ETS would talk to him

14   regarding the loan or foreclosure without an authorization letter from Plaintiff

15   acceptable to lender.

16       23.   Mr. Pollack requested Plaintiff to provide an authorization letter, entitled

17   power of attorney, which was received by Mr. Pollack and delivered to the ETS

18   representatives at ETS and to Wachovia on November 7, 2010 together with a request

19   for the reinstatement amount, if any, and wire instructions where to deliver the funds.

20       24.   On November 7 and November 8, 2010, Mr. Pollack had numerous

21   telephone conversations with Wachovia and ETS demanding reinstatement payoff

22   amounts. On November 8, 2010, Mr. Pollack was advised by ETS representatives

23   that Plaintiff's request for a letter of confirmation of reinstatement of the loan had

24   been sent to the lender but the lender had ignored the request. ETS representatives

25   advised Mr. Pollack that a sale had been scheduled for November 12, 2010 but that

26   there was nothing that ETS could or would do and that Mr. Pollack would have to

27   deal directly with Wachovia Mortgage regarding the reinstatement.

28       25.   During each conversation between Mr. Pollack and Wachovia on

PLAINTIFF'S [PROPOSED] THIRD AMENDED COMPLAINT

7

November 7 and 8 to discuss the loan, demand a payoff demand setting forth the amount that must be paid to reinstate the loan, and arrange for reinstatement of the loan, Mr. Pollack was unable to obtain any of the information requested. He was told by a person in the foreclosure department of Wachovia Mortgage, who refused to identify himself or herself, that it would take two weeks for Wachovia Mortgage to approve the power of attorney authorization from Plaintiff, and that pending approval Wachovia Mortgage would not discuss the loan or foreclosure. When Mr. Pollack advised the representative from Wachovia Mortgage that he understood that a sale had been set for November 12, 2010 and requested to speak with a manager, Mr. Pollack was told: "Like I told you, he will not talk to you either and you will be disconnected in 30 seconds." The Wachovia Mortgage representative then hung up. In none of the calls made by Mr. Pollack to Wachovia would the Wachovia individual with whom he was speaking provide a name or any other identification.

26.    During one of the calls on November 7 or 8, 2010, Mr. Pollack was told by a representative of Wachovia who would not otherwise identify himself or herself that in order to delay any sale Wachovia needed to see a statement of available funds to reinstate the loan.

27.    On November 10, 2010, Mr. Pollack obtained from Plaintiff and delivered to Wachovia Mortgage a letter signed by a vice president of Citi Private Bank with an attached copy of Plaintiff's account statement reflecting available funds in Plaintiff's account of in excess of $250,000. Mr. Pollack delivered the proof of available funds to Wachovia by facsimile on November 10, 2010 pursuant to instructions he received on that date in a telephone conversation with a Wachovia representative who would not otherwise disclose his identity, directing Mr. Pollack to deliver the funds by facsimile marked "Attention Foreclosure Department".

28.    On November 10, 2010, Plaintiff and Mr. Pollack had a three-way conversation with a representative of Wachovia Mortgage at which time Plaintiff authorized Mr. Pollack to act on her behalf in connection with the matter to obtain a

PLAINTIFF'S [PROPOSED] THIRD AMENDED COMPLAINT

reinstatement demand and to postpone the foreclosure sale pending determination of the October 11, 2010 tender of reinstatement funds. During that telephone conversation and in numerous telephone conversations on that date and the following day, Mr. Pollack requested a reinstatement demand and directions on how to proceed with respect to obtain a postponement of the sale. Mr. Pollack and Plaintiff were advised by the Wachovia Mortgage representative that the correct reinstatement amount had been received by Wachovia Mortgage in October, that Wachovia Mortgage had received the letter verifying current availability of funds, and that, upon receipt of a letter from Plaintiff disputing the sale, the foreclosure sale would be delayed pending resolution of the reinstatement by the prior tender of funds. The Wachovia Mortgage representative would not provide a statement of the amount required to be paid to reinstate the loan stating that the loan should have been reinstated upon receipt of the check in the amount of $48,800 in October, 2010. Plaintiff delivered by facsimile the letter disputing the sale as requested by Wachovia Mortgage.

29.     On November 10 or 11, 2012, in a telephone conversation with ETS employees, Liz or Monique, Mr. Pollack was told that ETS had spoken with Wachovia and that the payoff demand was approximately $51,800, and that the foreclosure sale would be postponed by delivery a copy of a cashiers check payable to Wachovia prior to 1 PM November 12, 2012. Mr. Pollack obtained a cashiers check in the amount of $52,000 payable to Wachovia and delivered a copy of the check to Wachovia and ETS as demanded.

30.     Without further notice to Plaintiff, and in breach of their promises and agreements with Plaintiff, and notwithstanding reinstatement of the loan in October, 2010, and without compliance with the notice, posting, and other statutory provisions of Civil Code § 2924 *et seq.*, Defendants proceeded with the foreclosure sale on November 12, 2010, at which time the Property was sold by ETS to Wells Fargo by Trustee's Sale and delivery of the Trustee's Deed, dated December 2, 2010, and

executed on behalf of ETS by Defendant Erica Puentes.

31.   On or about November 12, 2010, Wachovia Mortgage sent Plaintiff a letter, addressed to her Singapore address, advising her that Wachovia Mortgage would not recognize the power of attorney previously delivered which was missing a notary acknowledgment and photocopy of the drivers license.  On November 16, 2010, Wachovia Mortgage sent Plaintiff a letter acknowledging Mr. Pollack's authorization to act on Plaintiff's behalf with respect to the loan and deed of trust. In a letter dated November 16, 2010, postmarked November 18, 2010, and received by Plaintiff on November 30, 2010, Wachovia Mortgage states that Plaintiff's inquiry regarding reinstatement of the loan had been submitted to the Wachovia Mortgage foreclosure department for response and would take thirty days to respond.  On or about December 8, 2010, Wachovia Mortgage responded to Mr. Pollack and Plaintiff's prior inquiries and objections to the foreclosure sale, claiming, falsely, that the October 11, 2010 payoff check had been rejected because it was not in the form of a cashier's check, that Plaintiff had no contact with ETS or Wachovia Mortgage until November 9, 2010, and that they would not reconsider the November 12, 2010 Trustee Sale and Trustee's Deed to lender.

32.   Plaintiff is informed and believes, and thereon alleges, that immediately after acquiring title to the Property at the foreclosure sale, Wells Fargo, acting through Nick Arnett, Wells Fargo's REO sales representative, listed the Property for sale with Advisors and was record owner of the Property until it was sold by Wells Fargo and Advisors to a third-party on January 28, 2011.

33.   Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, including without limitation from August, 2010, through December, 2010, Defendants Wells Fargo, Advisors, and the Management Defendants had constructive and actual knowledge of Plaintiff's claims of ownership, occupancy and possession of the Property.

34.   Plaintiff is informed and believes and thereon alleges that at some time

subsequent to the foreclosure sale Defendants, other than ETS, caused the locks on Plaintiff's Property to be changed or otherwise obtained entry to the Property, and removed and converted to Defendants' use all of her personal furnishings, furniture and belongings in the Property, constituting a trespass and a wrongful constructive and actual eviction.

35.    Plaintiff is informed and believes, and thereon alleges, that the sale by Wells Fargo and Advisors was a part of the alleged wrongfully and fraudulently effected foreclosure of the Property by Wells Fargo, Wachovia and ETS, that the sale was effected with the purpose and with the effect of lender obtaining Plaintiff's equity in the Property and her personal property in the condominium, that the sale was made without notice to Plaintiff and with the purpose and effect of preventing Plaintiff from taking any action to protect her equity in and occupancy of the Property, that the Property was sold under circumstances intended to preclude recovery of the Property by Plaintiff, that it was sold to obtain a quick profit for Wells Fargo and Advisors and for substantially less than its fair market value, and that Wells Fargo and Advisors obtained possession of the Property and deprived Plaintiff of her occupancy and possession of the Property by a forcible entry and wrongful eviction.

## FIRST CAUSE OF ACTION FOR NEGLIGENCE
### (Against All Defendants Other Than ETS)

36.    Plaintiff refers to, and by this reference incorporates herein as though set forth at length, paragraphs1 through 37, inclusive, above.

37.    At all times relevant herein, lender and its agents, had a duty to exercise reasonable care and skill in the performance of duties and obligations relating to foreclosure and taking possession and effecting the termination of Plaintiff's possession and occupancy of the Property.

38.    In taking the actions alleged above, and in failing to take the actions as alleged above, lender breached their duty of care and skill to Plaintiff in the servicing

of Plaintiff's loan and deed of trust, handling the foreclosure of the Property under the deed of trust, obtaining possession of the Property and terminating Plaintiff's possession and occupancy by, among other things, failing to comply with the notice, posting, and other statutory provisions of Civil Code § 2924 *et seq.* in proceeding with the foreclosure; failing to reinstate the loan and deed of trust; failing to delay, extend or cancel the foreclosure sale; failing to communicate with Plaintiff and Plaintiff's authorized representatives regarding the foreclosure and foreclosure sale; failing to advise Plaintiff of reinstatement amounts promptly, properly and accurately; foreclosing on the Property without having the legal authority and/or proper documentation to do so; obtaining possession of the Property and depriving Plaintiff of her occupancy and possession of the Property by a forcible entry and wrongful eviction and without compliance with applicable law and procedures, and foreclosing on the Property for an improper purpose.

39.    In taking the actions alleged above, and in failing to take the actions as alleged above, the Management Defendants breached their duty of care and skill to Plaintiff in the management and care of Plaintiff's Property by, among other things, obtaining access to and possession of the Property and converting Plaintiff's personal property, depriving Plaintiff of her occupancy and possession of the Property by a forcible entry and wrongful eviction without compliance with applicable law and procedures.

40.    As a direct and proximate result of the negligence and carelessness of the Defendants as set forth above, Plaintiff has suffered damages in an amount not presently ascertained and will be proved at trial, but in any event in a sum not less than $250,000.

**SECOND CAUSE OF ACTION FOR BREACH OF WRITTEN AND ORAL CONTRACT**

**(Against Lender)**

41.    Plaintiff refers to, and by this reference incorporates herein as though set

1  forth at length, paragraphs 1 through 42, inclusive, above.

2       42.    Plaintiff has performed all conditions, covenants, and promises required
3  on her part to be performed in accordance with the terms of the NOD and the loan
4  agreement and deed of trust, and the terms of the oral agreement of lender, and its
5  agent, ETS acting on lender's behalf, to reinstate the loan, and to delay or cancel the
6  wrongfully scheduled and consummated foreclosure sale, except those terms for
7  which performance was excused and/or waived by the conduct of Defendants.

8       43.    The Defendants breached the written agreement consisting of the deed
9  of trust and loan agreement which it secures by failing and refusing to proceed with
10  a nonjudicial foreclosure sale in the event of a default under the terms of the deed of
11  trust or the note secured by the deed of trust as provided therein, and has breached the
12  deed of trust and the oral agreement between Plaintiff and lender by, among other
13  things, failing to comply with the notice, posting, and other statutory provisions of
14  Civil Code § 2924 *et seq.* in proceeding with the foreclosure; failing to reinstate the
15  loan and deed of trust; failing to delay, extend or cancel the foreclosure sale; failing
16  to communicate with Plaintiff and Plaintiff's authorized representatives regarding the
17  foreclosure and foreclosure sale; failing to inform Plaintiff of reinstatement amounts
18  properly and accurately; and foreclosing on the Property without having the legal
19  authority and/or proper documentation to do so.

20       44.    Plaintiff has made demands upon Defendants that Defendants comply
21  with the terms of the agreements, but Defendants have refused to do so.

22       45.    As a direct and proximate result of the Defendants' breach of contract,
23  Plaintiff has suffered damages in an amount not presently ascertained and will be
24  proved at trial, but in any event in a sum not less than $250,000.

25                   **THIRD CAUSE OF ACTION FOR**
26  **NEGLIGENT MISREPRESENTATION, CONCEALMENT AND DECEIT**
27                    **(Against Lender and ETS)**
28       46.    Plaintiff refers to, and by this reference incorporates herein as though set

forth at length, paragraphs 1 through 47, inclusive, above.

47.     Lender, and ETS, on behalf of lender, made the above-referenced false representations, concealments and non-disclosures relating to the written and oral promises and representations referred to above with knowledge of the misrepresentations, intending to induce Plaintiff's reliance, which the unsuspecting Plaintiff justifiably relied upon, resulting in damage to her credit standing, costs, expenses and loss of her Property. Plaintiff was unaware of the true facts. Had Plaintiff known the true facts, Plaintiff, among other things, would not have maintained the Defendants as her lender, and/or would have taken legal action immediately to save her residence and personal property, and maintain her occupancy and possession of the Property.

48.     The promises and representations made by lender and its agents to Plaintiff were untrue, and were untrue at the time that they were made. The true facts, which Defendants concealed from Plaintiff, were that Defendants at the time of making the representations, had no intention to perform the promises, duties and obligations of Defendants.   The true facts, concealed from Plaintiff, were that Defendants, at the time of making the representations, intended to act in the manner alleged above, including failing to comply with the notice, posting, and other statutory provisions of Civil Code § 2924 *et seq.* in proceeding with the foreclosure; failing to reinstate the loan and deed of trust; failing to delay, extend or cancel the foreclosure sale; failing to communicate with Plaintiff and Plaintiff's authorized representatives regarding the foreclosure and foreclosure sale; failing to inform Plaintiff of reinstatement amounts properly and accurately; foreclosing on the Property without having the legal authority and/or proper documentation to do so to convert the Property and Plaintiff's personal property to themselves at Plaintiff's expense; and evicting Plaintiff through a forcible entry and wrongful eviction.

49.     At the time Defendants made the misrepresentations to Plaintiff as set forth above, Defendants knew or should have known that the representations were

1    false, or were made by Defendants in reckless disregard of the truth.

2         50.    The acts of said Defendants constitute negligent misrepresentation to

3    Plaintiff, which misrepresentations were a substantial cause of the damage and injury

4    to the Plaintiff.

5         51.    As a proximate result of said negligence, Plaintiff has been damaged in

6    an amount not presently ascertained and will be proved at trial, but in any event in a

7    sum not less than $250,000.

8    ### FOURTH CAUSE OF ACTION FOR FRAUD, CONCEALMENT AND

9    ### DECEIT

10   ### (Against Lender and ETS)

11        52.    Plaintiff refers to, and by this reference incorporates herein as though set

12   forth at length, paragraphs 1 through 53, inclusive, above.

13        53.    Lender and its agents knowingly and willfully misrepresented and

14   concealed material facts, as alleged above, with the intent to defraud and deceive

15   Plaintiff and to induce Plaintiff to act as alleged herein.

16        54.    At all relevant times, Plaintiff believed these misrepresentations and was

17   not aware of the falsity of the representations and concealment of the true facts by

18   Defendants.

19        55.    Plaintiff actually and justifiably relied on the misrepresentations and

20   concealments by Defendants by acting as alleged herein, which she would not have

21   done had Defendants disclosed the true facts.

22        56.    As a proximate result of the misrepresentations and the failure to

23   disclose the true facts, Plaintiff has been damaged in an amount not presently

24   ascertained and will be proved at trial, but in any event in a sum not less than

25   $250,000.

26        57.    The conduct of Defendants was despicable, fraudulent, oppressive and

27   malicious, as defined in Civil Code § 3294, in that Defendants engaged in such

28   conduct with willful and conscious disregard of, and with the intention of depriving

Plaintiff of, Plaintiff's property and legal rights, and subjecting Plaintiff to a cruel and unjust hardship so as to justify an award of punitive damages against said Defendants, and each of them.

### FIFTH CAUSE OF ACTION FOR PROMISSORY FRAUD
### (Against Lender and ETS)

58.     Plaintiff refers to, and by this reference incorporates herein as though set forth at length, paragraphs 1 through 59, inclusive, above.

59.     The conduct of Defendants as alleged herein reflects an intention of Defendants from the date of entering into the deed of trust and upon initiation of the foreclosure proceeding to refuse to perform any of their promises and obligations with respect to the foreclosure and to conspire with and aid and abet each other and others to convert Plaintiff's Property to themselves, and to deprive Plaintiff of her rightful entitlement thereto and the benefits of the reinstatement, and her rights of occupancy and possession of the Property.

60.     As a direct and proximate result of Defendants' conduct, Plaintiff has been damaged in an amount not presently ascertained and will be proved at trial, but in any event in a sum not less than $250,000.

61.     The conduct of Defendants was despicable, fraudulent, oppressive and malicious, as defined in Civil Code § 3294, in that Defendants engaged in such conduct with willful and conscious disregard of, and with the intention of depriving Plaintiff of, Plaintiff's property and legal rights, and subjecting Plaintiff to a cruel and unjust hardship so as to justify an award of punitive damages against said Defendants, and each of them.

### SIXTH CAUSE OF ACTION FOR TRESPASS AND CONVERSION
### (Against Lender and Management Defendants)

62.     Plaintiff refers to, and by this reference incorporates herein as though set forth at length, paragraphs 1 through 63, inclusive, above.

63.     Defendants have wrongfully and without Plaintiff's knowledge or

consent changed the locks or otherwise obtained access to the Property and trespassed upon the Property to remove and convert to their own use and benefit, and to others presently unknown to Plaintiff, Plaintiff's personal property. Plaintiff has demanded, and hereby demands, the return of the converted property, but Defendants have failed and refused, and continue to fail and refuse, to return the property to Plaintiff.

64.    As a direct and proximate result of Defendants' conduct, Plaintiff has been damaged in an amount not presently ascertained and will be proved at trial, but in any event in a sum not less than $125,000.

65.    The conduct of Defendants was despicable, fraudulent, oppressive and malicious, as defined in Civil Code § 3294, in that Defendants engaged in such conduct with willful and conscious disregard of, and with the intention of depriving Plaintiff of, Plaintiff' property and legal rights, and subjecting Plaintiff to a cruel and unjust hardship so as to justify an award of punitive damages against said Defendants, and each of them.

## SEVENTH CAUSE OF ACTION FOR WRONGFUL FORECLOSURE
### (Against Lender and ETS)

66.    Plaintiff refers to, and by this reference incorporates herein as though set forth at length, paragraphs1 through 67, inclusive, above.

67.    As a direct and proximate result of the wrongful foreclosure conducted by Defendants, Plaintiff has been damaged in an amount not presently ascertained and will be proved at trial, but in any event in a sum not less than $250,000.

## EIGHTH CAUSE OF ACTION FOR WRONGFUL EVICTION
### (Against Lender and Management Defendants)

68.    Plaintiff refers to, and by this reference incorporates herein as though set forth at length, paragraphs1 through 69, inclusive, above.

69.    The obtaining possession of the Property and depriving Plaintiff of her occupancy and possession of the Property by a forcible entry and without compliance with applicable law and procedures, and obtaining access to and possession of the

PLAINTIFF'S [PROPOSED] THIRD AMENDED COMPLAINT

Property and converting Plaintiff's personal property, constitutes a forcible entry and constructive and actual wrongful eviction of plaintiff.

70.     By acting in the manner alleged herein, Defendants wrongfully dispossessed Plaintiff of her right to possess and occupy the Property in violation of law and without due process.

71.     As a direct and proximate result of Defendants' conduct, Plaintiff has been damaged in an amount not presently ascertained and will be proved at trial, but in any event in a sum not less than $250,000.

72.     The conduct of Defendants was despicable, fraudulent, oppressive and malicious, as defined in Civil Code § 3294, in that Defendants engaged in such conduct with willful and conscious disregard of, and with the intention of depriving Plaintiff of, Plaintiff's property and legal rights, and subjecting Plaintiff to a cruel and unjust hardship so as to justify an award of punitive damages against said Defendants, and each of them.

## NINTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Against Lender and Management Defendants)

73.     Plaintiff refers to, and by this reference incorporates herein as though set forth at length, paragraphs 1 through 74, inclusive, above.

74.     Defendants' conduct as alleged herein was outrageous and was engaged in by Defendants with the intention of causing, or with reckless disregard of the probability of causing, Plaintiff to suffer severe or extreme emotional distress. As an actual and proximate result of Defendants' conduct Plaintiff suffered severe emotional distress including fear, apprehension, anxiety, humiliation, shame, worry, embarrassment, mental anguish, physical injuries including loss of sleep, severe tension, pain and suffering, all to Plaintiff's damage in a sum to be proven at trial, but in any event in a sum not less than $250,000.

75.     The conduct of Defendants was despicable, fraudulent, oppressive and

PLAINTIFF'S [PROPOSED] THIRD AMENDED COMPLAINT

18

1  malicious, as defined in Civil Code § 3294, in that Defendants engaged in such
2  conduct with willful and conscious disregard of, and with the intention of depriving
3  Plaintiff of Plaintiff's property and legal rights, and subjecting Plaintiff to a cruel and
4  unjust hardship so as to justify an award of punitive damages against said Defendants,
5  and each of them.

## TENTH CAUSE OF ACTION FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### (Against Lender and Management Defendants)

76.  Plaintiff refers to, and by this reference incorporates herein as though set forth at length, paragraphs 1 through 67, inclusive, above.

77.  The aforesaid conduct of Defendants, if not intentional, was negligent or reckless and without due regard for Plaintiff's health and welfare.

78.  Defendants had a duty to act with due care towards Plaintiff.

79.  Defendants acted negligently, carelessly, wrongfully and without justification in carrying out their scheme to deprive Plaintiff of their rights and property interests. Defendants knew or should have known that Plaintiff would suffer severe emotional distress as a direct and proximate result of Defendants' conduct and its failure and refusal to exercise due care as alleged above.

80.  As a direct and proximate result of said negligence and carelessness of defendant, Plaintiff has suffered fear, apprehension, anxiety, humiliation, shame, worry, embarrassment, mental anguish, physical injuries including loss of sleep, severe tension, pain and suffering, and severe emotional distress, all to Plaintiff's damage in a sum to be proven at trial, but in any event in a sum not less than $250,000.

## ELEVENTH CAUSE OF ACTION FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### (Against Lender)

81.  Plaintiff refers to, and by this reference incorporates herein as though set

forth at length, paragraphs 1 through 82, inclusive, above.

82.     Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. This implied covenant of good faith and fair dealing requires that no party will do anything that will have the effect of impairing, destroying, or injuring the rights of the other party to receive the benefits of their agreement. The covenant implies that in all contracts each party will do all things reasonably contemplated by the terms of the contract to accomplish its purpose. This covenant protects the benefits of the contract that the parties reasonably contemplated when they entered into the agreement.

83.     Defendants did not act in good faith and did not deal fairly with Plaintiff in connection with the note and deed of trust when they sought to foreclose on the Property and refused to reinstate the loan as alleged above.

84.     The actions of Defendants as alleged above constituted a bad faith and willful breach of their implied covenant of good faith and fair dealing with Plaintiff in the contracts consisting of the original note and deed of trust, and the agreements referred to above relating to the foreclosure.

85.     As a result of the Defendants' breaches of this covenant, Plaintiff has suffered general and special damages in an amount to be determined at trial.

86.     The conduct of Defendants was despicable, fraudulent, oppressive and malicious, as defined in Civil Code § 3294, in that Defendants engaged in such conduct with willful and conscious disregard of, and with the intention of depriving Plaintiff of, Plaintiff' property and legal rights, and subjecting Plaintiff to a cruel and unjust hardship so as to justify an award of punitive damages against said Defendants, and each of them.

## TWELFTH CAUSE OF ACTION FOR AIDING AND ABETTING AND CONSPIRACY

### (Against All Defendants)

87.     Plaintiff refers, and by this reference incorporates herein as though set

forth at length, paragraphs 1 through 86, inclusive, above.

88.     Lenders, Advisers and ETS, and each of them, aided and abetted, encouraged, and rendered substantial assistance to the each other in breaching their obligations to Plaintiff as alleged herein and to aid and abet and substantially assist the commissions of the wrongful acts and omissions complained of. Said Defendants, and each of them, knowingly and willfully conspired, engaged in a common enterprise, and engaged in a common course of conduct to accomplish the wrongs complained of, the purpose and effect of which was to financially benefit said Defendants at the expense of Plaintiff and take possession of Plaintiff's property.

89.     The Management Defendants, and each of them, aided and abetted, encouraged, and rendered substantial assistance to the each other in breaching their obligations to Plaintiff as alleged herein and to aid and abet and substantially assist the commissions of the wrongful acts and omissions complained of. Said Defendants, and each of them, knowingly and willfully conspired, engaged in a common enterprise, and engaged in a common course of conduct to accomplish the wrongs complained of, the purpose and effect of which was to financially benefit said Defendants at the expense of Plaintiff and take possession of Plaintiff's property.

90.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages to be proven at trial, but in excess of $250,000, plus interest, punitive damages, and all other proximate and foreseeable loss caused by Defendants' conduct in an amount to be established at trial.

91.     The aforementioned conduct was engaged in by Defendants with fraud, oppression and malice, and with the intention of depriving Plaintiff of property, legal rights or otherwise causing it injury, and was despicable conduct in conscious disregard of Plaintiff's rights and safety, so as to justify an award of exemplary and punitive damages.

**THIRTEENTH CAUSE OF ACTION FOR VIOLATION OF SECTION 17200 OF THE CALIFORNIA BUSINESS & PROFESSIONS CODE**

**(Against All Defendants)**

92.     Plaintiff hereby incorporates paragraphs 1 through 91, inclusive, of this complaint as though fully set forth at length herein.

93.     Defendants have engaged in, and continue to engage in, acts or practices that constitute unfair competition, as that term is defined in Section 17200 of the California Business & Professions Code, requiring disgorgement of all profits and proceeds thereof.

**PRAYER**

WHEREFORE Plaintiff requests judgment against Defendants, and each of them, as follows:

1.     For compensatory, incidental and contractual damages in an amount according to proof and not less than $250,000;

2.     For interest in an amount allowable at law, including prejudgment interest;

3.     For all costs of suit and attorneys fees as may be authorized by contract, statute, or under the doctrine of tort of another in an amount according to proof;

4.     For punitive damages on Plaintiff's claims alleging intentional misconduct.

5.     For disgorgement of all profits and proceeds derived in violation of Business & Professions Code § 17200.

6.     For such additional relief that may be just and proper.

Dated:  September 24, 2012

By   _____

Roger Manlin, Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I, the undersigned, declare that I am over the age of 18 and am not a party to this action. I am employed in the City of Los Angeles, California; my business address is 4647 Kingswell Ave., No. 158, Los Angeles, CA 90027

On the date below, I served a copy of the following document entitled:

[Proposed] Third Amended Complaint for:
Claims Applicable to Wrongful Foreclosure
1. Negligence
2. Breach of Contract,
3. Negligent Misrepresentation
4. Fraud
5. Promissory Fraud
6. Trespass and Conversion
7. Wrongful Foreclosure
8. Wrongful Eviction
9. Intentional Infliction of Emotional Distress
10. Negligent Infliction of Emotional Distress
11. Breach of the Implied Covenant of Good Faith and Fair Dealing
12. Aiding And Abetting and Conspiracy
13. Violation of B&PC § 17200 *et seq.*

on all the interested parties in said case addressed as follows:

Served By The Court's CM/ECF System:

Counsel for Defendants Wachovia Mortgage and Wells Fargo Bank, NA
Jeremy E. Shulman, Esq.
jshulman@afrct.com
Anglin, Flewelling, Rasmusson, Campbell & Trytten LLP
199 S. Los Robles Ave., Suite 600
Pasadena, CA 91101
Tel: (626) 535-1900
Fax: (626) 577-7764

_____ By Mail: By placing the envelope for collection and mailing following our ordinary business practices. I am readily familiar with the firm's practice of collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with he United States Postal Service in Los Angeles, California, in sealed enveloped with postage fully thereon.

_____ (BY FACSIMILE)   I caused said documents to be sent to and served on the interested parties in this action by facsimile transmission by transmitting a true and correct copy thereof to the facsimile line set forth above. and receipt of confirmation of delivery.

__X__ Federal: I declare under penalty of perjury under the laws of the United States

of America that the foregoing is true and correct. I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. This declaration is executed in Los Angeles, California, on October 15, 2012.

G. Johnston

(Signature)